**LEILA W. MORGAN**
California State Bar No. 232874
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: Leila_Morgan@fd.org

Attorneys for Mr. Valdez-Arizpe

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR1363-BTM |
| Plaintiff, | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| v. | |
| **ROGER VALDEZ-ARIZPE**, | |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**[1]

On April 15, 2008, Border Patrol Agent Jonathan LaHart was conducting line watch duties in the Campo Border Patrol Station's area of operation. At approximately 7:00 a.m. he observed a white 1995 Mercury Cougar pass his location heading south on Tierra Del Sol Road. Agent LaHart stated that he recognized the driver as an admitted alien smuggler that he encountered the previous day driving a tan Chevrolet pickup truck. He then noticed that following directly behind the Mercury Cougar was a tan Chevrolet pick up trucks. Both of the vehicles had heavily tinted windows. Agent La Hart then saw the vehicles returning north bound approximately twenty minutes after that initially

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate. Mr. Valdez-Arizpe does not admit the accuracy of this information and reserves the right to challenge it at any time.

1  passed his location. Agent La Hart then called Border Patrol Dispatch and initiated a stop of the
2  vehicles.

3  Agent La Hart stopped the tan Chevrolet pickup, approached the truck and identified himself
4  as a Border Patrol Agent. He observed numerous people piled on top of one another in the front
5  passenger compartment and behind the bench seat. He then ordered the driver, Guillermo Soria-
6  Valdez, to exit the vehicle. Mr. Soria-Valdez complied and was immediately arrested. After
7  searching the vehicle he found seventeen individuals in the truck and began conducting field
8  interviews of both the individuals found in the truck and Mr. Soria-Valdez. Through his questioning
9  he determined that all of the individuals were Mexican citizens who stated that they had no
10 documents to enter the United States. Mr. Soria-Valdez and the seventeen others found in the truck
11 were then taken to the Campo Border Patrol station for processing.

12 While this was happening, Border Patrol Agent Randall Hallmark stopped the white Mercury
13 Cougar. Agent Hallmark approached the Cougar, and observed people piled on top of one another.
14 He then order the driver, Mr. Valdez-Arizpe to exit the vehicle. Mr. Valdez-Arizpe complied with
15 the request and was immediately arrested. Agent Hallmark then requested that the other individuals
16 exit the vehicle as well, seven other people were found in the vehicle. After all of the individuals
17 were taken out of the vehicle and secured, Agent Hallmark questioned each of them as to their
18 citizenship and immigration status. All of the individuals, including Mr. Valdez-Arizpe stated that
19 they were Mexican citizens without documents to enter the United States. Mr. Valdez-Arizpe and
20 the seven others were then transported to the Campo Border Patrol Station for processing.

21 Once at the Border Patrol Station, Mr. Valdez-Arizpe was read his Miranda and Consular
22 rights. Mr. Valdez-Arizpe requested that he be allowed to speak with the Mexican consulate. Agent
23 Padilla attempted to contact the consulate, but was unable to do so, because the office was closed.
24 Mr. Valdez-Arizpe was then provided with the telephone number for the consulate. Mr. Valdez-
25 Arizpe invoked his right to remain silent pursuant to Miranda. Subsequent to his invocation, he was
26 questioned regarding whether he wished to retain any of the material witnesses. Mr. Valdez-Arizpe
27 requested that a "tall man with back problems" be held as a material witness. Mr. Valdez-Arizpe
28 //

1  was then escorted to the processing area in order to identify the material witness he was describing.
2  Mr. Valdez-Arizpe was unable to identify the material witness in question.
3        On April 30, 2008, the January 2007 Grand Jury returned an indictment charging Mr. Valdez-
4  Arizpe with four counts of transportation of illegal aliens for financial gain in violation of Title 8
5  U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i), and (v)(II); and one count of being a deported alien found
6  in the United States in violation of 8 U.S.C. § 1326(a) and (b).
7        These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY

10        Mr. Valdez-Arizpe requests the following discovery. His request is not limited to those items
11  of which the prosecutor is aware. It includes all discovery listed below that is in the custody, control,
12  care, or knowledge of any "closely related investigative [or other] agencies." See United States v.
13  Bryan, 868 F.2d 1032 (9th Cir. 1989).
14        1.   The Defendant's Statements. The government must disclose to Mr. Valdez-Arizpe *all*
15  copies of any written or recorded statements made by Mr. Valdez-Arizpe; the substance of any
16  statements made by Mr. Valdez-Arizpe that the government intends to offer in evidence at trial; any
17  response by Mr. Valdez-Arizpe to interrogation; the substance of any oral statements that the
18  government intends to introduce at trial and any written summaries of Mr. Valdez-Arizpe's oral
19  statements contained in the handwritten notes of the government agent; any response to any Miranda
20  warnings that may have been given to Mr. Valdez-Arizpe; and any other statements by Mr. Valdez-
21  Arizpe. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991
22  amendments to Rule 16 make clear that the government must reveal *all* Mr. Valdez-Arizpe's
23  statements, whether oral or written, regardless of whether the government intends to make any use
24  of those statements.
25        2.   Arrest Reports, Notes and Dispatch Tapes. Mr. Valdez-Arizpe also specifically
26  requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances
27  surrounding his arrest or any questioning, if such reports have not already been produced *in their*
28  *entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records,

reports, transcripts or other documents in which statements of Mr. Valdez-Arizpe or any other discoverable material is contained. **Mr. Valdez-Arizpe includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has written.** This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and Brady v. Maryland, 373 U.S. 83 (1963). See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Valdez-Arizpe are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

3. Brady Material. Mr. Valdez-Arizpe requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

4. Any Information That May Result in a Lower Sentence. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Mr. Valdez-Arizpe, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines"). Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Valdez-Arizpe's criminal history, or any other application of the Guidelines.

5. The Defendant's Prior Record. Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D). Mr. Valdez-Arizpe specifically requests a complete copy of any criminal record.

6. Any Proposed 404(b) Evidence. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in

advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

This includes any "TECS" records (records of prior border crossings) that the government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999).

Mr. Valdez-Arizpe requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7. <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8. <u>Request for Preservation of Evidence</u>. The defense specifically requests that all **dispatch tapes** or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to **vehicle involved in the case**, Mr. Valdez-Arizpe's personal effects, and any evidence seized from Mr. Valdez-Arizpe or any third party. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9. <u>Henthorn Material</u>. Mr. Valdez-Arizpe requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514

1  U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable
2  evidence known to the others acting on the government's behalf in the case, including the police");
3  United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). This request includes, but is not limited to,
4  any complaints filed (by a member of the public, by another agent, or any other person) against the
5  agent, whether or not the investigating authority has taken any action, as well as any matter for which
6  a disciplinary review was undertaken, whether or not any disciplinary action was ultimately
7  recommended. Mr. Valdez-Arizpe further requests production of any such information at least *one*
8  *week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether
9  certain information should be disclosed pursuant to this request, this information should be produced
10 to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

11         10.    Tangible Objects. Mr. Valdez-Arizpe requests the opportunity to inspect, copy, and
12 test, as necessary, all other documents and tangible objects, including photographs, books, papers,
13 documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are
14 material to the defense or intended for use in the government's case-in-chief or were obtained from
15 or belong to Mr. Valdez-Arizpe. Fed. R. Crim. P. 16(a)(1)(E). Specifically, Mr. Valdez-Arizpe
16 requests **color copies** of all photographs in the government's possession of the alleged narcotics and
17 the vehicle in which the narcotics were found.

18         11.    Expert Witnesses. Mr. Valdez-Arizpe requests the name, qualifications, and a written
19 summary of the testimony of any person that the government intends to call as an expert witness
20 during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description
21 of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). See United States
22 v. Duvall, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not
23 adequately summarize or describe police detective's testimony in drug prosecution where notice
24 provided only a list of the general subject matters to be covered and failed to identify what opinion
25 the expert would offer on those subjects). This request includes, but is not limited to, disclosure of
26 the qualifications of any government witness who will testify that he understands and/or speaks
27 Spanish or any other foreign language that may have been used during the course of an interview
28 with Mr. Valdez-Arizpe or any other witness.

1  Mr. Valdez-Arizpe requests the notice of expert testimony be provided at a minimum of *three*
2  *weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony,
3  including obtaining its own expert and/or investigating the opinions, credentials of the government's
4  expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any
5  expert. See Kumho v. Carmichael Tire Co., 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge
6  is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such
7  determinations may require "special briefing or other proceedings").

8  12. Impeachment evidence. Mr. Valdez-Arizpe requests any evidence that any prospective
9  government witness has engaged in any criminal act whether or not resulting in a conviction and
10 whether any witness has made a statement favorable to Mr. Valdez-Arizpe. See Fed. R. Evid. 608,
11 609 and 613. Such evidence is discoverable under Brady, 373 U.S. 83. See United States v. Strifler,
12 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49
13 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

14 13. Evidence of Criminal Investigation of Any Government Witness. Mr. Valdez-Arizpe
15 requests any evidence that any prospective witness is under investigation by federal, state or local
16 authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

17 14. Evidence of Bias or Motive to Lie. Mr. Valdez-Arizpe requests any evidence that any
18 prospective government witness is biased or prejudiced against Mr. Valdez-Arizpe, or has a motive
19 to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); Strifler,
20 851 F.2d 1197.

21 15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity.
22 Mr. Valdez-Arizpe requests any evidence, including any medical or psychiatric report or evaluation,
23 tending to show that any prospective witness's ability to perceive, remember, communicate, or tell
24 the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled
25 substance, or has ever been an alcoholic. Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d
26 213, 224 (4th Cir. 1980).

27 16. Witness Addresses. Mr. Valdez-Arizpe requests the name and last known address of
28 each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987);

United States v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Valdez-Arizpe also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

17.  Name of Witnesses Favorable to the Defendant. Mr. Valdez-Arizpe requests the name of any witness who made any arguably favorable statement concerning Mr. Valdez-Arizpe or who could not identify him or who was unsure of his identity or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis, 637 F.2d at 223; Jones v. Jago, 575 F.2d 1164,1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

18.  Statements Relevant to the Defense. Mr. Valdez-Arizpe requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). **This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.**

19.  Jencks Act Material. Mr. Valdez-Arizpe requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); see also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Valdez-Arizpe to investigate the Jencks material. Mr. Valdez-Arizpe requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20. <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Mr. Valdez-Arizpe requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21. <u>Agreements Between the Government and Witnesses</u>. Mr. Valdez-Arizpe requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. <u>Informants and Cooperating Witnesses</u>. Mr. Valdez-Arizpe requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Valdez-Arizpe. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Valdez-Arizpe.

23. <u>Bias by Informants or Cooperating Witnesses</u>. Mr. Valdez-Arizpe requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio</u>, 405 U.S. 24. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. <u>Personnel Records of Government Officers Involved in the Arrest</u>. Mr. Valdez-Arizpe requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Valdez-Arizpe. See <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974).

Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. <u>Training of Relevant Law Enforcement Officers</u>. Mr. Valdez-Arizpe requests copies of all written videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Mr. Valdez-Arizpe also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover contraband in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. <u>Performance Goals and Policy Awards</u>. Mr. Valdez-Arizpe requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

27. <u>TECS Reports</u>. Mr. Valdez-Arizpe requests all TECS reports, including reports pertaining to all vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Mr. Valdez-Arizpe. **Any prior border crossings are considered "other acts" evidence which the government must produce before trial**. <u>Vega</u>, 188 F.3d at 1154.

28. <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr. Valdez-Arizpe requests the reports of all tests and examinations conducted upon the evidence

1  in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in
2  this case, that is within the possession, custody, or control of the government, the existence of which
3  is known, or by the exercise of due diligence may become known, to the attorney for the government,
4  and that are material to the preparation of the defense or are intended for use by the government as
5  evidence in chief at the trial.

6    29.  Brady Information. The defendant requests all documents, statements, agents' reports,
7  and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the
8  credibility of the government's case. Under Brady v. Maryland, 373 U.S. 83 (1963), impeachment
9  as well as exculpatory evidence falls within the definition of evidence favorable to the accused.
10 United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

11   30.  Any Proposed 404(b) Evidence. The government must produce evidence of prior
12 similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions
13 which would be used to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid.
14 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance
15 of trial . . . of the general nature" of any evidence the government proposes to introduce under
16 Fed. R. Evid. 404(b) at trial. The defendant requests notice two weeks before trial to give the
17 defense time to investigate and prepare for trial.

18   31.  Specific Request. Mr. Valdez-Arizpe specifically requests the opportunity to view the
19 "A-File" of the material witness in this case.

20   32.  Residual Request. The defendant intends by this discovery motion to invoke her rights
21 to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the
22 Constitution and laws of the United States.
23 //
24 //
25 //
26 //
27 //
28 //

### III.

**THIS COURT SHOULD DISMISS COUNT 5 OF THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE**

The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

Count Five of the indictment charges Mr. Valdez-Arizpe with being a previously-deported alien found in the United States in violation of 8 U.S.C. § 1326. Yet the indictment fails to allege all of the elements necessary to convict Mr. Valdez-Arizpe of violating 8 U.S.C. § 1326. Specifically, the indictment fails to allege that Mr. Valdez-Arizpe (1) knew he was in the United States; (2) failed to undergo inspection and admission by an immigration officer at the nearest inspection point; and (3) voluntarily entered the United States. Since it fails to allege all the elements of the offense, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under immigration law); see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999). However, since these issues were decided against Mr. Valdez-Arizpe in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004), they are not briefed in this motion, but are raised to preserve them for further appeal. Mr. Valdez-Arizpe is willing to submit further briefing on these issues to this Court if so ordered.

Additionally, the 9th Circuit has recently held that an indictment alleging a violation of 8 U.S.C. §1326 must allege both "the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction." United States v. Salazar-Lopez, 506 F.3d

748, 749-750 (9th Cir. 2007). In Salazar-Lopez, the indictment charged the defendant with a violation of § 1326 but "did not allege that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-Lopez's prior removal." Id. at 750. The 9th Circuit unequivocally held that the indictment "required" an allegation that the defendant "had been removed on a specific, post-conviction date." Id. at 751. Here, the indictment fails to allege that Mr. Valdez-Arizpe "had been removed on a specific, post conviction date." Instead, the indictment only says that Mr. Valdez-Arizpe "was removed from the United States subsequent to July 1, 1996." The indictment completely fails to mention Mr. Valdez-Arizpe's prior conviction and a specific date of deportation after that conviction. This is insufficient under Salazar-Lopez and therefore Count Five of the indictment must be dismissed.

### IV.

### **THIS COURT SHOULD GRANT LEAVE TO FILE FURTHER MOTIONS**

Mr. Valdez-Arizpe and defense counsel have received 185 pages of discovery in this case and a DVD containing taped statements. Defense counsel has reason to believe this discovery is incomplete. Defense counsel requests leave to file further motions as new information comes to light.

### V.

### **CONCLUSION**

For the reasons stated, Mr. Valdez-Arizpe requests that this Court grant her motions.

Respectfully submitted,

DATED:    May 28, 2008         /s/ *Leila W. Morgan*
                               **LEILA W. MORGAN**
                               Federal Defenders of San Diego, Inc.
                               Attorneys for Mr. Valdez-Arizpe
                               Leila_Morgan@fd.org